**Bank of Hawaii**,
Plaintiff/Appellant,

v.

Nick C. **Sablan** and Lucy T. Sablan,
Defendants/Appellees.
Appeal No. 95-023
Civil Action No. 95-133
May 29, 1997

Submitted on the Briefs May 2, 1997

Counsel for Appellant: Michael A. White, Saipan.

Counsel for Appellee: Lucy T. Sablan, Pro Se, Saipan.

BEFORE: TAYLOR, Chief Justice, VILLAGOMEZ and ATALIG, Justices.

ATALIG, Justice:

¶1   ■ Appellant, Bank of Hawaii ("BOH"), appeals the denial of its request for a new trial and for damages and attorney's fees. We have jurisdiction pursuant to title 1, § 3102 (a) of the Commonwealth Code. We affirm.

### ISSUES PRESENTED AND STANDARD OF REVIEW

¶2   The issues before us are whether the Superior Court erred in denying BOH's motion for a new trial pursuant to Com. R. Civ. P. 83(i) and for damages and attorney's fees pursuant to the Bad Checks Act of 1984, 7 CMC § 2441 et. seq. ( "The Bad Checks Act").

¶3   ■ A trial court's denial of a motion for a new trial is reviewed for manifest or gross abuse of discretion. *Robinson v. Robinson*, 1 N.M.I. 81, 86 (1990); *Commonwealth v. Saimon*, 3 N.M.I. 365, 397 (1992).

¶4   ■ Whether plaintiff is entitled to damages and attorney's fees pursuant to the Bad Checks Act is a question of law subject to de novo review. *In re S.S.*, 3 N.M.I. 177, 179 (1992); *Nansay Micronesia Corp. v. Govendo*, 3 N.M.I. 12, 16 (1992).

### FACTS AND PROCEDURAL BACKGROUND

¶5   On June 3, 1994, Lucy T. Sablan ("Lucy") issued a check payable to Nick C. Sablan ("Nick") in the amount of $1,000 drawn upon her account at City Trust Bank. Nick deposited the check in his account at BOH and subsequently withdrew the funds from his account. The

75

check was later returned unpaid to BOH by City Trust Bank due to insufficient funds.

¶6 On December 14, 1994, BOH through its attorney sent a demand letter by certified mail to the Sablans pursuant to the Bad Checks Act. The letter dated December 13, 1994, demanded that the payment of the check be made within thirty days from the date of the letter. The letter also contained a written demand, required to be included in all demand letters under the Act, which stated that if the Sablans failed to pay the check amount within thirty days of "delivery *or* mailing" of the letter, BOH could file suit against them to collect treble damages as well as attorney's fees. The U.S. Postal certified card indicates that the Sablans received the demand letter on December 21, 1994. On January 20, 1995, Lucy paid $1,000 to the counsel of record for BOH.

¶7 On January 30, 1995, BOH filed a small claims complaint against Nick and Lucy. At trial, BOH moved for a dismissal of the case as to Nick and the case proceeded as to Lucy. On July 3, 1995, the Superior Court issued a Decision and Order which held that Lucy was not liable to BOH for damages. On July 6, 1995, BOH filed a request for a new trial. The request was heard on July 26, 1995 and denied. BOH timely appealed.

## ANALYSIS

### I. Plaintiff was not entitled to a new trial as a matter of right.

¶8 On July 6, 1995, BOH requested a new trial pursuant to Com. R. Civ. P. 83(i) which provided:

> Either party to a small claims judgment *may* have a new trial in the same court according to the usual trial procedure for larger claims by filing a request for a new trial within thirty (30) days after the small claims judgment.

Com. R. Civ. P. 83 (i) (emphasis added).

¶9 The Superior Court held that Com. R. Civ. P. Rule 83(i) provided the court with discretion in deciding whether or not to grant a new trial. We agree. In addition, had a new trial been granted, it would have been based solely on the legal issue of when the thirty day notice period commences under the Bad Checks Act. This issue had already been addressed at the small claims court.

### II. Appellant is not entitled to damages or attorney's fees pursuant to The Bad Checks Act.

#### A. Language of the Statute

¶10 In interpreting a statute, courts first look at the language of the statute. *Commonwealth Ports Auth. v.*

*Hakubotan Saipan Enter. Inc.*, 2 N.M.I. 212, 221 (1991). Unless the statute provides otherwise, the courts should adhere to the rule that words be given their plain meaning. *Id.*; *Nansay*, 3 N.M.I. at 18.[1] A statute is considered ambiguous when it is capable of more than one meaning. *Wisconsin Dep't. of Revenue v. Nagle-Hart, Inc.*, 234 N.W. 2d 350, 352 (Wis. 1975). The standard for testing for an ambiguity is whether the language of the statute is confusing to a "well informed person." *Id.* Ambiguities should be resolved in favor of a "just, equitable, and beneficial operation of the law." *Bennett v. Sullivan's Island Bd. of Adjustment*, 438 S.E. 2d 273, 274 (S.C. Ct. App. 1993).

¶11 The Bad Checks Act is ambiguous as to when the thirty day notice period begins. Some clauses indicate that the period begins following personal delivery <u>or</u> mailing of the demand letter:

> Any person, who makes, utters, draws, or delivers any check, payment of which is refused or dishonored due to lack of funds or credit to pay, or is refused or dishonored because the maker has no account with the drawee bank under the account number specified in the check, and who fails to pay the payee the amount thereof together with such charges as may be lawfully imposed by the bank *within 30 days following a written demand delivered personally to the maker, <u>or</u> mailed* to the maker by certified mail to the maker's address shown on the check, or mailed to such other address of the maker as may be actually known by the payee . . . . The right to treble damages shall not accrue, and no action shall be brought therefore, until 30 days have passed from the *mailing <u>or</u> personal delivery* of the written demand of the payee containing the notice.

7 CMC § 2442(a) (emphasis added).

¶12 Other clauses indicate that the maker's thirty day period begins to run from the date of delivery *or* mailing of the demand letter. The following language is required to be contained in a demand letter as a condition for the payee to be eligible to collect treble damages:

> YOUR FAILURE TO PAY THE CHECK AMOUNT TOGETHER WITH ANY LAWFUL CHARGES WITHIN **30 DAYS FOLLOWING DELIVERY <u>OR</u> MAILING** OF THIS NOTICE MAY RESULT IN A COURT JUDGMENT

---

[1] The issue before the court in *Nansay* involved an agency's interpretation of an ambiguous statute through its rules and regulations.

AGAINST YOU FOR THREE TIMES THE AMOUNT OF THE CHECK.

7 CMC § 2442(a) (emphasis added).

IF YOU FAIL TO PAY THE CHECK AMOUNT TOGETHER WITH ANY LAWFUL CHARGES **WITHIN THIRTY (30) DAYS OF DELIVERY OR MAILING** OF THIS WRITTEN DEMAND AND THEREAFTER SUIT IS BROUGHT TO COLLECT THE AMOUNTS OWING, THE COURT SHALL AWARD ATTORNEY'S FEES, AS PROVIDED BY LAW.

7 CMC § 2442(b) (emphasis added).

¶13 A well informed person could conclude that the Bad Checks Act is ambiguous because the notice requirement is capable of more than one meaning. The thirty day period could begin to run when: 1) the written demand is personally delivered; 2) the written demand is delivered by mail; 3) the written demand is mailed by certified mail; or 4) the date the demand letter was written. Thus, solely by examining the language of the Act, it is not clear when the thirty day notice period commences.

## B. Intent of Statute

¶14 Since the language of the statute is unclear, we look at the intent of the legislature and the effect that the statute has on those it sought to effect. *Hakubotan, supra*, at 221. Statutes may be considered both penal and remedial where "it gives a right of action for an injury suffered by an individual, and also imposes a forfeiture for its violation." *Geisinger v. Milner Hotels, Inc.*, 202 S.W.2d 142, 147 (Mo. Ct. App. 1947). The Bad Checks Act is such a hybrid statute. It is remedial in that it allows the maker an opportunity to cure by paying the outstanding amounts of the checks. It is penal in that if the maker does not cure within the statutory time limit, then they will be assessed a penalty of treble damages and/or attorney's fees. Thus, although the legislature seeks to protect citizens from those who pass bad checks, it also provides makers with an opportunity to pay the amount owed before a suit is filed or a penalty is awarded. Since this opportunity is for the benefit of the maker, it is essential that the notice provide a clear understanding of when payment is due.

¶15 The demand letter was dated December 13, 1994. It demanded payment of the check within thirty days from the date of the letter. It also contained a written demand, required to be included in all demand letters under the Act, which stated that if the Sablans failed to pay the check amount within thirty days of "delivery *or* mailing" of the letter, BOH could file suit against them to collect treble damages as well as attorney's fees. On December 14, 1994, the letter was mailed by certified mail to pursuant to the Bad Checks Act. The Sablans received the demand letter on December 21, 1994. On January 20, 1995, Lucy paid $1,000 to the counsel of record for BOH.

¶16 ▮ Since the Act is ambiguous as to when the 30 day notice requirement begins to run, the just and equitable result would be to provide the maker thirty days from the receipt of the demand letter in which to pay the amount owed.[2] Therefore, since Lucy tendered the amount due to BOH on January 20, 1995, thirty days from the receipt of the demand letter, she is not liable for any other damages under the Bad Checks Act.

## CONCLUSION

¶17 For the reasons set forth above, we hereby **AFFIRM** the Superior Court's order denying BOH's motion for a new trial pursuant to Com. R. Civ. P. 83(i) and BOH's request for damages and attorney's fees pursuant to the Bad Checks Act.

---

[2] Federal courts routinely apply the common law presumption that properly mailed documents will be received in due course by the addressee. *See Anderson v. United States*, 966 F.2d 487, 491 (9th Cir. 1992); *Stache v. Int'l. Union of Bricklayers*, 852 F.2d 1231, 1234 n.2 (9th Cir. 1988). Therefore, under the Bad Checks Act, if the maker receives the demand letter within the 30 day period, they have 30 days from the receipt of the letter to make payment. However, if there is no response from the maker, then the creditor may rely on the certified demand letter to show that notice has been effectuated.