**E-FILED**
**CNMI SUPREME COURT**
E-filed: Mar 07 2023 06:09PM
Clerk Review: Mar 07 2023 06:09PM
Filing ID: 69282543
Case No.: 2022-SCC-0019-CIV
NoraV Borja



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

**ANAKS OCEAN VIEW HILL HOMEOWNERS ASSOCIATION, LTD.**
*Petitioner-Appellant,*

*v.*

**PERRY INOS, JR. ET AL.**
*Respondent-Appellee*

**AND**

**ATKINS KROLL SAIPAN, INC.**
*Applicant-Appellee.*

**Supreme Court No. 2022-SCC-0019-CIV**

---

**ORDER DENYING MOTION TO STAY AGENCY ACTION AND REQUESTS FOR JUDICIAL NOTICE**

**Cite as: 2023 MP 1**

Decided March 7, 2023

———————

CHIEF JUSTICE ALEXANDRO C. CASTRO
JUSTICE PRO TEMPORE ROBERT J. TORRES, JR.
JUSTICE PRO TEMPORE F. PHILIP CARBULLIDO

———————

Superior Court No. 22-0103-CV
Judge Pro Tempore David A. Wiseman, Presiding

———————

PER CURIAM:

¶ 1     This matter comes before the Court upon the appeal filed by Appellant ANAKS Ocean View Hill Homeowners' Association, Ltd. ("ANAKS") after the Superior Court dismissed their Petition for judicial review for lack of subject-matter jurisdiction. Co-appellee Commonwealth Zoning Board ("Zoning Board") voted and issued Conditional Use Permit No. 2020-10382 to Co-appellee Atkins Kroll Saipan, Inc. ("Atkins Kroll") for the construction and operation of an Atkins Kroll car dealership and vehicle repair facility next to ANAKS' condominiums in Puerto Rico. ANAKS moves to stay the effective date of Conditional Use Permit No. 2020-10382 issued to Atkins Kroll. ANAKS and Atkins Kroll also ask this Court to take judicial notice of various documents that the Zoning Board considered before issuing the conditional use permit.

¶ 2     We DENY ANAKS' Motion to Stay Agency Action. We further DENY ANAKS' and Atkins Kroll's Requests for Judicial Notice. We VACATE the Superior Court's Order dismissing ANAKS' Petition for lack of jurisdiction and sua sponte REMAND for further proceedings consistent with this Order.

## I. FACTS AND PROCEDURAL HISTORY

¶ 3     ANAKS is a lessee of Lot 074 D 133 in Puerto Rico, Saipan, which comprises of 131 residential units and home to over 170 residents. Next to this property is Lot EA 896-R1, owned by the Camacho Trust.[1] Atkins Kroll leased Lot EA 896-R1 to develop a Toyota/Lexus car dealership and vehicle repair facility.

¶ 4     The lots occupied by ANAKS and Atkins Kroll are in the "Mixed Commercial"[2] zoning district under the Saipan Zoning Law of 2013, as amended ("SZL"). While a car dealership is a permitted use[3] in the mixed commercial zoning district, the vehicle repair shop requires a conditional use permit[4] to operate.

---

[1]   Albert LG. Camacho & Paul William Camacho, Trustees of Lot E.A. 896-R1, intervened as defendants in the Superior Court.

[2]   Saipan is subdivided into eleven zoning districts. SZL § 401. The mixed commercial zoning district "provides a broad spectrum of commercial development that requires a moderate to high level of vehicular access and for low to moderate density residential development." *Id.* at § 507. In contrast, the industrial zoning district "protects and promotes economic development by reserving and protecting areas that have particular suitability for industry while controlling effects on adjoining communities." *Id.* at § 506.

[3]   A permitted use is "allowed by right in the zoning district subject to meeting all applicable requirements of this Law." SZL § 404. Section 404 offers a detailed table of which uses are permissible, conditional, temporary, or prohibited for each zoning district. *See Id.* at Table 1. Table of Permitted, Conditional and Temporary Use.

[4]   A conditional use permit:

> shall be obtained for certain uses that would become harmonious or compatible with neighboring uses through the application and maintenance of qualifying conditions and siting in specific locations

SZL § 404. "Vehicle Repair"[5] is only a permitted use in the industrial zoning district. *Id.*

¶ 5    The Zoning Board administers a land use and zoning system throughout the Commonwealth. *See* 2 CMC § 7211. On or about January 4, 2022[6], Atkins Kroll applied for a conditional use permit through the Zoning Board to allow the vehicle repair part of its project, which included plans to build 27 vehicle service bays to operate in the mixed commercial zone. By January 12, the Zoning office received the plans and drawings for the project, and the Zoning Permitting Supervisor prepared a memorandum assessing the project's compliance with the applicable zoning laws.

¶ 6    The Zoning Board held its first public meeting on January 19, 2022 to review and discuss Atkins Kroll's application. ANAKS' President and several residents appeared at the meeting to state their concerns to the Zoning Board on Atkins Kroll's application. The day before the meeting, ANAKS requested that the Zoning Board allow ANAKS sixty days to review and respond to Atkins Kroll's application, which it granted.

¶ 7    The Zoning Board held its second public meeting on March 9, 2022 to discuss Atkins Kroll's application for a conditional use permit. ANAKS, with its attorney present, again challenged the development and asked for the denial of the permit or the grant of sixty more days for ANAKS to review and respond to the application. The Zoning Board did not grant another sixty days but allowed ANAKS one week to review the supplemental memorandums submitted by Atkins Kroll to the Zoning Board.

------

within a zoning district, but that would not be allowed under the general conditions of the zoning district as stated in this Law.
SZL § 1308(a).

[5]    Section 410(j) of the Saipan Zoning Law defines "Vehicle Repair" as:

[a]n establishment engaged in the repair and maintenance of motor vehicles or other heavy equipment or machinery, including automobiles, boats, motorcycles and trucks, paint and body work. Typical uses include automobile repair garages, vehicle inspection centers, paint and body shops, automobile tune-up stations, automotive glass shops, quick lubes, automotive car washing and detailing, and muffler shops. This use does not include overnight storage of a vehicle that is not being actively repaired or that is not currently registered with the Department of Motor Vehicles. General Vehicle Repair businesses shall be screened from adjoining properties zoned as Village Residential, Village Commercial, Rural, or Mixed Commercial. Screening shall consist of appropriate vegetation or fencing.
SZL § 410(j).

[6]    Atkins Kroll states they applied for a conditional use permit on December 17, 2021. But the permit issued on April 13 states that Atkins Kroll applied for the permit on January 4, 2022.

¶ 8    On March 18, 2022 (the "March 18 Vote"), the Zoning Board held a special meeting to discuss Atkins Kroll's application for a conditional use permit and voted unanimously to approve the project with nineteen express conditions. Before the vote, ANAKS' President, its attorney, and several of its residents were present at the special meeting to raise their concerns about the project. They again asked for more time to review the project, and if the request for more time was denied, requested the Zoning Board to deny Atkins Kroll's application. The Zoning Board denied both requests.

¶ 9    The Zoning Board issued Conditional Use Permit No. 2020-10382 to Atkins Kroll on April 13, 2022, followed by a written order on April 21, 2022. On May 13, 2022, ANAKS filed their Petition seeking judicial review of the Zoning Board's decision to grant the conditional use permit to Atkins Kroll under 1 CMC § 9112. The Petition was filed 22 days after the issuance of the Zoning Board Order, 30 days after the permit was issued, and 56 days after the March 18 Vote. In the Petition, ANAKS requested the court issue a preliminary injunction prohibiting the construction of the dealership and vehicle repair shop until the disposition of the action, the revocation of the conditional use permit, or in the alternative, remand to the Zoning Board.

¶ 10    On July 22, 2022, Atkins Kroll and the Zoning Board moved to dismiss ANAKS' Petition. They claimed that under 1 CMC § 9112(b), the March 18 Vote was the final agency action triggering the thirty-day period for ANAKS to file its appeal. Since ANAKS filed its Petition on May 13, 56 days after the March 18 Vote, the Superior Court had no jurisdiction. ANAKS disagreed, contending that they timely filed their Petition because the March 18 Vote was merely interlocutory, and the final agency action was the Zoning Board's written order published on April 21.

¶ 11    The Superior Court agreed with Atkins Kroll and the Zoning Board and found it did not have jurisdiction because the March 18 Vote was the final agency action. The court dismissed the Petition with prejudice, and judgment was entered.

¶ 12    ANAKS moved for reconsideration under NMI R. Civ. P. 59(e) and a motion to stay agency action under 1 CMC § 9112(e). The Superior Court denied both motions, reiterating that it lacks jurisdiction to hear the Petition.

¶ 13    On appeal, ANAKS moves to stay the effective date of the conditional use permit. In addition, ANAKS and Atkins Kroll request this Court take judicial notice of various exhibits submitted to the Zoning Board during its public meetings.

## II. Jurisdiction

¶ 14    We have appellate jurisdiction over final judgments and orders of the Commonwealth Superior Court. NMI Const. art. IV, § 3. Further, 1 CMC § 9113 grants "aggrieved parties" standing to appeal Superior Court decisions reviewing administrative matters. *N. Marianas Coll. v. Civil Serv. Comm'n*, 2006 MP 4 ¶ 5.

### III. STANDARD OF REVIEW

¶ 15    While we have not ruled on the standard of review for a motion to stay pending appeal, "[t]he standard for granting a stay shall be that standard which governs such motions in civil matters." NMI R. P. ADMIN. 3(e); *see also Pac. Sec. Alarm, Inc. v. Commonwealth Ports Auth.*, 2006 MP 17 ¶ 12 ("[W]e do not give deference to the lower court's findings because our review of agency actions is done with the identical guidelines followed by the lower court under the Administrative Procedure Act."). "[W]e review the judicial review of an agency action de novo." *Marianas Ins. Co. v. Commonwealth Ports Auth.*, 2007 MP 24 ¶ 8.

¶ 16    In determining whether a stay will be granted, "[t]he moving party must show: 1. a combination of probable success on the merits and the possibility of irreparable injury; or 2. that serious questions are raised and the balance of hardships tips sharply in its favor." *Vaughn v. Bank of Guam*, 1 NMI 318, 321 (1990).[7]

### IV. DISCUSSION
#### A. Final Agency Action

¶ 17    The parties dispute when the Zoning Board's action became final for calculating when the 30-day period to request judicial review began to run under 1 CMC § 9112(b). Atkins Kroll and the Zoning Board contend that the Zoning Board's oral vote approving the conditional use permit on March 18, 2022 consummated the Zoning Board's decision-making process and where Atkins Kroll's rights and obligations were determined. In support, Appellees rely on 2 CMC § 7221(j)(2), which reads that "[n]o decisions of the Zoning Board shall be made other than in a duly noticed public meeting." They argue that no authority requires the Zoning Board to issue its decisions in writing.

¶ 18    By contrast, ANAKS claims that the March 18 Vote did not, and could not have, constituted a final agency action to trigger the 30-day appeal period. Instead, they argue that the issuance of the conditional use permit on April 13, 2022 or the written order on April 21 should be considered the final agency action. Further, ANAKS points to inconsistencies between the terms of the Zoning Board's March 18 Vote and what was in the conditional use permit and written order as evidence that the March 18 Vote could not have been final. We agree.

---

[7]    Section 9112(e) under Commonwealth Administrative Procedure Act ("CAPA") states identical language as written in *Vaughn*:

> On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.
> 1 CMC § 9112(e).

¶ 19    The Commonwealth's Administrative Procedure Act ("CAPA") allows for judicial review of final agency actions. 1 CMC § 9112(d). "An aggrieved party must seek judicial review within thirty days of a final agency action." *Cody v. N. Mar. I. Ret. Fund*, 2011 MP 16 ¶ 18 (citing 1 CMC § 9112(a)-(b)). For an agency action to be considered final, it must satisfy two requirements. "First, the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. Second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Cody v. N. Mar. I. Ret. Fund*, 2011 MP 16 ¶ 18 (internal quotations and citations omitted); *Marianas Ins. Co. v. Commonwealth Ports Auth.*, 2007 MP 24 ¶ 27.

¶ 20    Finality is a jurisdictional requirement for any appeal of an agency action. *Cody v. N. Mar. I. Ret. Fund*, 2011 MP 16 ¶ 18 (citing *Ukiah Valley Med. Ctr. v. Fed. Trade Comm'n*, 911 F.2d 261, 264 n.1 (9th Cir. 1990)) ("[A] finding of finality, or of an applicable exception, is essential when the court's reviewing authority depends on one of the many statutes permitting appeal only of 'final' agency action."). Thus, when determining whether an agency action is final and ripe for judicial review, "we look to see whether the agency has rendered its last word on the matter." *Or. Natural Desert Ass'n v. United States Forest Serv.*, 465 F.3d 977, 984 (9th Cir. 2006) (internal quotations and citations omitted).

¶ 21    We have discussed what a final agency action is in other contexts. *Cody* addressed a situation in which the plaintiff sought judicial review of a denial of certain benefits by the Northern Mariana Island Retirement Fund Board of Trustees. There, the administrator did not issue a final written decision on the denial of plaintiff's benefits. On the finality of the agency's action, we held that the "Fund's *inaction* had the same impact upon Cody as a *denial* of relief." *Cody*, 2011 MP 16 ¶ 21 (2011) (emphasis added). This factually differs from this case. Here, we do not have a situation in which the Zoning Board denied Atkins Kroll's application so that further action was not required. Rather, we are presented with a situation in which the Zoning Board acted. Thus, the fact that in *Cody* we held that the lack of a written decision still constituted a final agency action has little persuasive value here.

¶ 22    Under the facts before us, the March 18 Vote constitutes an action by the Zoning Board, but we do not view this action as a final agency action satisfying the two-part test in *Cody*. While the vote authorized the Zoning Board to issue a conditional use permit to Atkins Kroll, it was only when the permit was issued on April 13, 2022 that the decision-making process of the Zoning Board was consummated and became final. The reduction of the oral vote into writing in the form of a conditional use permit, delineating and specifying the rights, duties, and obligations of Atkins Kroll, is not an insignificant step that can be viewed as merely an extension of a final action.

¶ 23    The issuance of the conditional use permit itself is the very consummation of the Zoning Board's decision-making process. The application that Atkins Kroll

filed was to seek a permit and the decision of the Zoning Board—as evidenced by Conditional Use Permit No. 2020-10382 and Zoning Board Order No. 2022-1-03—was to approve the issuance of the permit. (Conditional Use Permit at 4; *see also* Zoning Board Order No. 2022-1-03 ("A permit shall be granted for this Conditional Use Application...[.]")).

¶ 24    By voting to approve the issuance of the conditional use permit, the Zoning Board required the added step of the conditional use permit being prepared and given to Atkins Kroll. If, for example, the Zoning Board failed to issue the conditional use permit despite its vote, such an act would be considered a violation of the Zoning Board's decision, and the process would remain incomplete. Thus, steps would be taken, by either the Zoning Board or an interested party, to ensure that the conditional use permit was issued. We do not view the issuance of the permit as merely an implementation of the Zoning Board's final action with no legal or practical significance. Instead, that issuance is the final action from which the full decision-making process is consummated.

¶ 25    The standard under *Cody* is not satisfied merely upon the decision of an agency being made. Instead, the decision-making *process* is the operative element to the first clause of the *Cody* test. Here, the decision-making process was consummated once the permit was issued to Atkins Kroll on April 13, 2022.

### B. The Language of Relevant Statutes

¶ 26    Atkins Kroll and the Zoning Board argue that it is not required for a Zoning Board's decision to be in writing for it to be considered final. They cite 2 CMC § 7221(j)(2), which mandates that "no decisions of the Zoning Board shall be made other than in a duly noticed public meeting." They further claim that an oral vote made during a Zoning Board meeting is a final agency action under Section 9112(d) of CAPA and aligns with our caselaw in *Cody* and *Marianas Ins. Co.*

¶ 27    ANAKS contends that decisions made in Zoning Board meetings are merely interlocutory because they require additional steps, such as issuing the written permit or order, for it to become final and from which legal rights or obligations have been determined. They also claim that Section 7221(j)(2) is ambiguous in determining if an oral vote is a final agency action within the context of the Zoning Board and CAPA. We agree.

¶ 28    When a statute is capable of more than one meaning, its language is considered ambiguous. *Bank of Haw. v. Sablan*, 1997 MP 9 ¶ 10. "The standard for testing for an ambiguity is whether the language of the statute is confusing to a 'well informed person.'" *Id.* "Ambiguities should be resolved in favor of a just, equitable, and beneficial operation of the law." *Id.* (internal quotations and citations omitted).

¶ 29    Section 7221(j)(2) sets forth the procedures of Zoning Board meetings and how they operate. It provides, *inter alia*, how often the Zoning Board must meet, the notice requirements of such meetings, the parameters of what can be discussed

at meetings, and addresses the opportunity for public participation.[8] The key clause at issue mandates that "no decisions of the Zoning Board shall be made other than in a duly noticed public meeting." *Id.* The confusion arises with the term "decisions" and whether such decisions made during a Zoning Board meeting are considered final for judicial review of a final agency action under Section 9112. It is also unclear whether such a decision must be made either in writing or may be expressed orally.

¶ 30    A well informed person could conclude that the term "decisions" is ambiguous because it is capable of more than one meaning. The clause fails to specify whether decisions made during a Zoning Board meeting are considered final and whether such decisions alter the legal rights and obligations under the Commonwealth.

¶ 31    Similarly, 2 CMC § 7221(l) does not help resolve the issues before us. It states:

> An applicant may appeal a determination of the Zoning Board pursuant to the provisions of 1 CMC § 9112, except that the court shall act upon such appeals within 60 days of the written record of the relevant Zoning Board meeting being made available to the court.
> 2 CMC § 7221(l).

This provision suggests that an aggrieved party can appeal a decision of the Zoning without the written record. But the situation this statute envisages is not present in this case. As we have stated, Section 9112(d) only allows for appeals after a final agency action, which did not occur until the conditional use permit was issued. Since Section 7221(l) is subject to the requirements and limitations of Section 9112(d), our analysis of Section 9112(d) controls. Instead, Section 7221(l) simply

---

[8]    Section 7221(j)(2) in its entirety reads:

> The Zoning Board shall meet at least once a month or as necessary to discharge its responsibilities without undue delay. Either the chairman or any three members may call a meeting. Advance public notice in at least one newspaper of local circulation shall be provided for at least two weeks prior to a meeting. Meetings of the Zoning Board, except for those meetings dealing with termination, hiring, or discipline of the zoning administrator, shall be open to the public. The opportunity for public participation at meetings shall be provided. No decisions of the Zoning Board shall be made other than in a duly noticed public meeting. The Zoning Board shall adopt rules of procedure necessary for the conduct of its operations and meetings. A majority of the Zoning Board members is required to transact official business consistent with other applicable Commonwealth law.
> 2 CMC § 7221(j)(2).

prescribes required time limits for court action upon the availability of the written record of the relevant Zoning Board meeting.

¶ 32    Moreover, the phrase "a determination of the Zoning Board" remains ambiguous. Because there lacks a definition of what a "determination" is, it is subject to various reasonable interpretations as to its meaning. For example, a determination may include an oral vote, a written order, or a permit. But the statute fails to make that distinction. This broad wording, and the ambiguity it creates, should not be construed to allow for another avenue of appeal to avoid the requirements for a final agency action.

¶ 33    Thus, we do not interpret Section 7221(l) as being dispositive for the issues before us.

*C. Discrepancies Between the Oral Vote, Conditional Use Permit, and Written Order.*

¶ 34    Atkins Kroll argues that the nineteen conditions expressed during the issued permit and written order are "identical" and merely memorialize the Zoning Board's vote. We disagree.

¶ 35    More concretely, the conditional use permit issued to Atkins Kroll here differs from the terms of the Zoning Board issued in its March 18 Vote. The permit and the March 18 decision do not have the same terms. Contrary to Appellee's assertion, the Zoning Board on March 18 added these conditions:

> 1. To reduce the commercial bay height parapet down to 42'2" elevation, equal to the back bay and across. Just that parapet itself reduce down the height.
> 2. To maintain decibel levels as reported in the study provided to us in terms of the stand-by generators, air compressors, air conditioners, water pumps within the property.
> Atkins Kroll's Request for Judicial Notice, Exhibit 4, Commonwealth Zoning Board Special Meeting Minutes (Mar. 18, 2022).

Yet, the conditional use permit states:

> 16. The applicant shall reduce the Commercial Bay Structure to 42 feet.
> 17. The applicant shall maintain decibel levels as reported and submitted to the Zoning Office within its property lines.
> Appellant's Mot. to Stay Agency Action, Exhibit 1B, Conditional Use Permit No. 2020-10382 (Apr. 13, 2022).

¶ 36    In comparing these provisions, while they address the same requirements in broad strokes, the Zoning Board's oral vote contained far more specific requirements than those in the conditional use permit. Because of this discrepancy, the obligations of Atkins Kroll are unclear, as is which version controls. When

considering that heavy penalties would be assessed against Atkins Kroll for violating the terms, at $1,000 a day, it is imperative for clear obligations to be set forth. It is antithetical to the terms of the *Cody* test to require Atkins Kroll to abide and be bound by terms in the permit if the oral vote, with differing terms, is the controlling determination.

¶ 37    We thus do not view the March 18 Vote as the Zoning Board's last word on the matter. It took the Zoning Board twenty-six days after its vote to actually issue the permit. Between the time of the vote and when the permit was issued, the Zoning Board could have amended its original decision in another meeting to issue the conditional permit with different terms. Facts and circumstances could arise in which a written permit differs from the terms of an oral vote at a public meeting. An applicant or an aggrieved party would likely suffer prejudice if they relied on the terms of an oral vote only to learn later that those terms differ from those in the actual permit issued. A written permit explicitly defines which legal rights and obligations are in effect.

¶ 38    From a general policy standpoint, relying on the clear and exact written terms of the permit allows for a uniform, consistent, and explicit establishment of when a party's rights or obligations have been determined or from which legal consequences will flow. This aligns with the requirements of *Cody & Marianas Ins. Co.* This also best serves the public interest to require explicit documentation outlining the terms by which a party is bound.

¶ 39    We note that there is no uniform interpretation across other jurisdictions as to how similar situations are treated, namely, whether absent authority requiring a written decision, an agency's oral vote triggers a statutory appeals period. For example, in *Hoagland v. Town of Clear Lake Bd. of Zoning Appeals*, 871 N.E.2d 376, 383 (Ind. Ct. App. 2007), the Indiana Court of Appeals held that a zoning board's final decision occurred on the date of its oral vote, even though the board did not issue written findings of fact because the plaintiffs were aware of the decision. New York, on the other hand, has held that the filing of the meeting minutes reflecting a board's vote begins the running of the statute of limitations. *92 MM Motel, Inc. v. Zoning Bd. of Appeals*, 90 A.D.3d 663, 664 (N.Y. App. Div. 2011). Pennsylvania, in interpreting its statutory scheme, has held that zoning decisions are not final until the commission issues a written decision. *First Ave. Partners v. City of Pittsburgh Planning Comm'n*, 151 A.3d 715, 722 (Pa. Commw. Ct. 2016).

¶ 40    The variances of zoning laws across different jurisdictions in the United States occur because zoning laws are localized and tailored to the communities they serve. With little to no uniformity across jurisdictions, they offer little guidance on resolving this issue before us and offer little persuasive value. Rather, the portrait that these cases present is one in which each jurisdiction must look to its own statutory scheme to determine how best to resolve the issue before it.

**V. CONCLUSION**

¶ 41    We agree with ANAKS that the 30-day period under Section 9112(b) commenced when the Zoning Board issued the conditional use permit to Atkins Kroll on April 13, 2022. The issuance of the conditional use permit consummated the Zoning Board's decision-making process and determined the rights and obligations of the parties. Thus, for purposes of the Zoning Board, the issuance of a permit serves as a final agency action under Section 9112 of CAPA.

¶ 42    Furthermore, ANAKS and Atkins Kroll seek judicial notice of various documents and pleadings each has submitted. Because of the decision to remand this matter, both requests are rendered moot. *Commonwealth v. Repeki*, 2003 MP 1 ¶ 14.

¶ 43    We DENY ANAKS' Motion to Stay Agency Action. We further DENY ANAKS' and Atkins Kroll's Requests for Judicial Notice. We VACATE the Superior Court's Order dismissing ANAKS' Petition for lack of jurisdiction and sua sponte REMAND for further proceedings consistent with this Order.

  SO ORDERED this 7th day of March, 2023.


  /s/
ALEXANDRO C. CASTRO
Chief Justice


  /s/
ROBERT J. TORRES, JR.
JUSTICE PRO TEMPORE


  /s/
F. PHILIP CARBULLIDO
JUSTICE PRO TEMPORE


COUNSEL

Kathryn B. Fuller & Colin M. Thompson, Saipan, MP, for Appellant.

J. Robert Glass, Jr. & Keisha Blaise, Saipan, MP, for Co-Appellee.

Rodney J. Jacob, Hagåtña, GU & Sean E. Frink, Saipan, MP, for Co-Appellee.

Joey P. San Nicholas, Saipan, MP, for Co-Appellee.

NOTICE

This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, this slip opinion may be revised or withdrawn. If there are any discrepancies between this slip opinion and the opinion certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165 Saipan, MP 96950, phone (670) 236–9715, fax (670) 236–9702, e–mail Supreme.Court@NMIJudiciary.gov.